UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PAMELA MAYHEW, BETSY FARNSWORTH,
on behalf of themselves and others
similarly situated,

       Plaintiffs,

v.                           Civil Action no. 2:17-cv-03844

LOVED ONES IN HOME CARE, LLC,
and DONNA SKEEN,

       Defendants.

MEMORANDUM OPINION AND ORDER

       Pending before the court is the plaintiffs' motion for conditional certification of the present action as a collective action under the Fair Labor Standards Act (the "Act"), 29 U.S.C. § 216(b), filed on August 30, 2017.  Plaintiffs seek such certification on behalf of all similarly situated employees of the defendants impacted by the same or similar pay practices as those pay practices that deprived plaintiffs of overtime pay. The motion is accompanied by plaintiff Mayhew's affidavit. Defendants have filed a response in opposition.  Plaintiffs, alleging a willful violation, seek recovery for the three years that precede the filing of the original complaint on July 28, 2017.  Among its other affirmative defenses, Loved Ones contends it was exempt from the Act's overtime pay requirements, based on 29 U.S.C. § 213(a)(15), the scope of which arguably encompassed

home health care workers, such as the plaintiffs.

## I.   Facts

The court accepts the background facts, primarily as they are presented in the motion as well as in the second amended complaint (hereinafter "Complaint" or "Compl."), as true for the purposes of considering this motion.  Plaintiffs have worked for defendant Loved Ones, a third party provider of home health care services in West Virginia, as home health care workers.  Defendant Donna Skeen is a "member or the managing member" of Loved Ones, controls its "day-to-day operations," and is an "employer" as that term is defined in the Act.  29 U.S.C. § 203(d); Compl. ¶ 3.  Plaintiff Mayhew is affiliated with Loved Ones' office in South Charleston, and plaintiff Farnsworth is affiliated with its location in Ripley.

While plaintiffs regularly and consistently worked in excess of a forty-hour workweek and were allegedly at no time exempt from the Act's wage and hour requirements, they were not paid all of the overtime pay they were owed until defendants changed their payroll practices in May 2017 to bring them into compliance.  Defendants' failure to pay an enhanced overtime rate was allegedly "deliberate and knowing" as evidenced by the "elaborate measures Defendants have employed to avoid detection and challenge."  Compl. ¶ 11.  As a significant part of that

2

failure, between "early" 2016 and May 2017, defendants made out
two distinct paychecks for each workweek with straight-time
compensation on each check without regard for hours on the
other.  At other times (presumably prior to early 2016),
defendants did not pay overtime despite including all the time
on a single paycheck.  Id. ¶¶ 12-14.  Other employees were also
adversely affected by similar payroll practices, which were
based on uniform protocols.  Id. ¶ 15, 22; Ans. to Compl. ¶ 19.
When Mayhew asked her employer about the overtime pay practices,
she was told that the practices were "legal and proper because
they paid hours by individual funding sources."  Mot. at 4.
Loved Ones explains that as a home health aide/home care
provider, Mayhew serves clients under two separate programs, the
personal care program and the Medicaid waiver program, which
were treated as distinct for payroll purposes during the period
from early 2016 to May 2017.  ECF No. 8 at 10.  Thus, during
that period, she was treated as if she had two separate jobs for
overtime pay purposes.

        While, as already noted, plaintiffs maintain that they
were covered by the Act's protections at all relevant times, a
new administrative rule issued by the United States Department
of Labor ("DOL") made them "specifically subject" to these
protections.  Compl. ¶¶ 7-8.  The rule, with the original
effective date of January 1, 2015, governs the application of

                            3

the Act's protections to the home health care industry in
general and to the plaintiffs in particular.  Application of the
Fair Labor Standards Act to Domestic Service, 78 Fed. Reg.
60454-01 (Oct. 1, 2013).  The rule interprets the Act's
exemption for "any employee employed in domestic service
employment to provide companionship services for individuals who
(because of age or infirmity) are unable to care for
themselves."  29 U.S.C.A. § 213(a)(15).  With respect to third
party employers such as Loved Ones, the rule states as follows:

> Third party employers of employees engaged in
> companionship services within the meaning of
> § 552.6 may not avail themselves of the minimum
> wage and overtime exemption provided by section
> 13(a)(15) of the Act, even if the employee is
> jointly employed by the individual or member of
> the family or household using the services.
>
> 29 C.F.R. § 552.109.

In contrast, before the new rule went into effect, the statutory
exemption for companionship services included employees of third
party providers, such as Loved Ones, which arguably made its
conduct lawful at the time.  See Home Care Ass'n of Am. v. Weil,
799 F.3d 1084, 1087 (D.C. Cir. 2015).  Understandably,
defendants assert the statutory exemption as one of their
affirmative defenses.  Ans. at 7.

This rule had initially been stayed pursuant to a
decision by the U.S. District Court for the District of

4

Columbia, but on August 21, 2015, the D.C. Circuit overturned the vacatur of the rule, ordering the district court to enter summary judgment in favor of the DOL.  Weil, 799 F.3d at 1097. As a result of this delay, the DOL has chosen to enforce the new rule starting on November 12, 2015, thirty days after the D.C. Circuit issued a mandate directing the district court to enter summary judgment, pursuant to its policy.  80 Fed. Reg. 65646, 65647 (Oct. 27, 2015), whereas plaintiffs assert the rule's effective date to be January 1, 2015.

Mayhew complained to the DOL in early 2017, seeking the back overtime pay she was owed.  While communicating with the DOL investigators, Mayhew was informed of "DOL's preliminary opinion" that defendants had engaged in similar conduct that violated the Act with respect to seventy other employees working out of the same South Charleston office.  Farnsworth was subject to the same conduct even though she works out of Ripley.  Compl. ¶¶ 20-21.  The parties agree that the DOL is now in the process of attempting to calculate and to settle overtime claims of approximately 230 similarly situated employees working out of defendants' various locations.  Id. ¶ 17; Ans. ¶ 17.

As was already noted, in May 2017, Loved Ones changed its overtime pay policy across the board, so the plaintiffs received the overtime pay that was due them after that date.

5

After Mayhew learned that, pursuant to the agency's general written policy, DOL would only seek wages back to November 2015, she instituted the present action with the assistance of her private counsel, and Farnsworth later joined the action.

Plaintiffs seek damages (including overtime pay due, liquidated damages and attorney fees, costs, and interest) under 29 U.S.C. § 255 for willful violations of the Act, incurred over a period of three years that predate the filing of the complaint.  In addition, they seek this present certification to issue notice to all similarly situated plaintiffs.  Compl. ¶ 29.

Loved Ones requests that the certification be denied or, alternatively, stayed pending the DOL settlement, or limited in scope.

## II.   Discussion

A.   <u>Conditional Certification of the Collective Action</u>

Employees may bring a collective action under the Act on behalf of similarly situated employees.  29 U.S.C. § 216(b).  According to the statute, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court."  <u>Id.</u>  The Supreme Court authorized courts to facilitate notice to potential plaintiffs in such collective actions, emphasizing the importance of "employees receiving accurate and

timely notice concerning the pendency of the collective action"
and observing that "[c]ourt authorization of notice serves the
legitimate goal of avoiding a multiplicity of duplicative
suits." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170,
172 (1989).  The Supreme Court underscored the district court's
discretion in managing the certification process.  Id. at 171.

As a consequence, many courts have chosen to adopt a
two-stage approach to managing collective actions under the Act,
which originates in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J.
1987).  The first stage consists of conditional certification to
give notice to potential class members and takes place early in
the litigation, before much of the discovery.  At the first stage,
the court requires only a "modest factual showing" that potential
plaintiffs are "similarly situated," as the statute requires.  That
showing "is ordinarily based mostly on parties' pleadings and
affidavits."  See Encinas v. J.J. Drywall Corp., 265 F.R.D. 3, 6
(D.D.C. 2010).  The second stage is usually triggered by a
decertification motion by the defendant, after much of the
discovery has taken place, in an attempt to show that "the
plaintiffs are not, in fact, similarly situated."  Id.

Although the Fourth Circuit has not settled on a
particular test for conditional certification, courts nationwide
generally consider the burden on the named plaintiffs at the

7

first stage to be relatively lenient.  See, e.g., Hipp v.
Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218-19 (11th Cir.
2001), cert. denied 519 U.S. 982 (quoting Grayson v. K Mart
Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)) (characterizing the
plaintiff's burden at the notice stage as "not heavy" and
requiring it to be met by "making substantial allegations of
class-wide discrimination"); Zavala v. Wal Mart Stores Inc., 691
F.3d 527, 536 (3rd Cir. 2012) (internal quotations omitted)
(affirming the use of the two-step approach and noting that the
first-stage "conditional certification" is "not really a
certification" but "actually the district court's exercise of
[its] discretionary power. . . to facilitate the sending of
notice to potential class members"); Mooney v. Aramco Servs.
Co., 54 F.3d 1207, 1214 (5th Cir. 1995) ("Because the court has
minimal evidence, this determination [at the notice stage] is
made using a fairly lenient standard, and typically results in
'conditional certification' of a representative class.").

        In this case, the first-stage burden at the
conditional certification, or notice, stage is met easily.
Plaintiffs cite the May 2017 change of Loved Ones' approach to
overtime pay as evidence that there was a practice that covered
Loved Ones' employees generally.  The fact that Loved Ones is in
the midst of settling a DOL investigation of its overtime pay
practices that is designed to determine the amount the workers

8

should recover, coupled with defendants' argument that this case be stayed until that is completed, firmly supports the conclusion that such a practice existed.

Still, Loved Ones contends that Mayhew has not presented evidence of similarly situated employees, as required by statute for the collective action to proceed.  However, that contention plainly lacks merit.  Mayhew's affidavit states that other Loved Ones' employees were subject to the same overtime pay policy as she was.  ECF No. 5-1.  This statement, in addition to the foregoing circumstances, and the absence of contrary evidence, is sufficient at this first stage of conditional certification.  See Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 386-87 (E.D.N.Y. 2010) (conditionally certifying a class of undergraduate or graduate assistants subject to the university's common practice of violations under the Act, when named plaintiffs submitted affidavits and the lead plaintiff identified seven other students who were also denied appropriate compensation); Viriri v. White Plains Hosp. Med. Ctr., 320 F.R.D. 344, 350 (S.D.N.Y. 2017) (conditionally certifying a class of nurses at the hospital, when plaintiff submitted his own declarations and identified two other employees "who have shared information about Defendant's employment practices," and noting the importance of the plaintiff's "alleg[ing] the specific manner and operation in which such underpayment was

9

effected," namely, compensating nurses based on predetermined twelve-hour shifts rather than on the time actually worked, which regularly exceeded twelve hours).  Similarly, here plaintiffs identify specific ways in which they were denied overtime pay, e.g., through the use of separate paychecks corresponding to separate clients and/or income streams.  Compl. ¶¶ 12-13.  Mayhew further points out that she specifically raised the issue with both the employer and then the DOL. Mayhew Affidavit, ECF No. 5-1 ¶¶ 4, 9.

Loved Ones also asks that conditional certification be denied because, as earlier noted, it is "in the midst of an ongoing DOL investigation" which is "nearly complete" and would "moot" the collective action.  The defendant argues that with the DOL having already calculated preliminary figures of wages owed, judicial efficiency would not be served by certifying this action.  ECF No. 8, at 2-4.

However, Loved Ones does not cite, and the court is not aware of, any authorities holding that collective actions under the Act should not be allowed to proceed when there are ongoing DOL investigations into similar claims.  While Loved Ones certainly prefers to only resolve the DOL investigation, denying certification on this ground would sit uneasily with the established law and practice of allowing both public and private

10

enforcement of the Act. The doctrine of mootness, invoked by Loved Ones, is inapposite inasmuch as the claims have not been secured as yet, and, furthermore, plaintiffs seek overtime pay going back potentially as far as three years (if the violation is found to be willful), while the DOL is only calculating overtime pay dating back to November 12, 2015. Such enforcement policy in no way signals any legal flaw with crediting the plaintiffs' contention that the rule is effective as of January 1, 2015, the date originally envisioned by the DOL.

As the foregoing discussion shows, the court is well within its discretion to promote judicial efficiency by facilitating notice to potential plaintiffs in the collective action, and the plaintiffs presented enough evidence of similarly situated employees to order such notice. Moreover, there is good reason to believe that the alternative path advanced by Loved Ones, an administrative settlement with DOL, would not result in the same recovery and would not vindicate all the rights at issue in this matter, as demonstrated by the lead plaintiff Mayhew's path to this action. Accordingly, the court finds sufficient cause to grant conditional certification to proceed with notice to other potential opt-in plaintiffs.

B.    Request to Stay Proceedings

As an alternative to denying conditional certification, Loved Ones, in its response to the motion, asks the court to stay these proceedings.

In this circuit, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Maryland v. Universal Elections, 729 F.3d 370, 379 (4th Cir. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  Such a decision is left to the court's broad discretion and "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Raplee v. United States, 842 F.3d 328, 335 (4th Cir. 2016) (quoting Landis, 299 U.S. at 254-55).  As this court has explained, a court considers three factors in evaluating whether a stay is appropriate: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." Tolley v. Monsanto Co., 591 F. Supp. 2d 837, 844 (S.D.W. Va. 2008) (Goodwin, J.) (quoting Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).  Accordingly, the court proceeds to analyze the three factors to determine whether a stay may be appropriate here.

12

Looking at the first Tolley factor, Loved Ones argues that the court "should allow the DOL to issue findings of fact and the opportunity to enter negotiations without the added pressure of a separate, and virtually identical, cause of action. The DOL investigation and the DOL's proposed settlement could resolve any and all claims of the potential opt-in plaintiffs." (ECF No. 8, at 5). However, an already-mentioned peculiarity of the DOL's enforcement policy renders the fact-finding and settlement in that proceeding materially different from the present action because of the divergence between the relevant lookback time periods. In addition, the court notes, and Loved Ones concedes, that were a stay granted, the action could still resurface after a possible settlement with DOL, if some workers refuse to sign on to it due to the insufficient recovery. Although Loved Ones frames such a possible outcome as a way to "promot[e] judicial economy" by "simplify[ing] issues" and "weed[ing] out" plaintiffs, the incompleteness of DOL's fact-finding limits its usefulness so that any efficiency gains from a stay are outweighed by the potential harm to workers. ECF No. 8 at 6. Besides, proceeding with this suit at the same time that an administrative settlement of lesser scope is being developed assures the workers that their best interests are being protected without costs to them. Accordingly, the factor tilts against granting a stay.

13

Turning to the second factor, Loved Ones urges that it would be prejudiced in the event of the denial of a stay because it would have to "spend substantial time and resources" litigating this case. ECF No. 8 at 6. That circumstance only occurs because Loved Ones understandably wishes to limit its exposure at the expense of the plaintiffs and others like them who have presented a plausible claim to a far greater recovery. Simple fairness neutralizes this factor.

Finally, in its discussion of the third factor, Loved Ones emphasizes the wastefulness of plaintiffs' counsel poring through the same payroll records and calculating the same back wages as the DOL. ECF No. 8 at 7. That argument would have merit if potential recovery of back pay could only go back to November 2015. Plaintiffs ask for back pay not only to January 1, 2015, but also for willful violations of the Act, for which the statute of limitations is three years. Compl. ¶ 26; 29 U.S.C. § 255(a).

District court decisions on the effective date of the DOL rule are informative and weigh against a stay. Plainly, January 1, 2015 represents the majority view of the rule's effective date. See, e.g., Guerrero v. Moral Home Servs., Inc., 247 F. Supp. 3d 1288, 1291-93 (S.D. Fl. 2017) (discussing cases and endorsing the "well-reasoned" January 1 view); Richert v.

14

LaBelle HomeHealth Care Serv. LLC, 2:16-cv-437, 2017 WL 4349084, at *1-3 (S.D. Ohio, September 29, 2017) (same).  Once the district court's vacatur of the rule was overruled, the status quo ante was restored, and, it is held, the rule went into effect as of January 1, as the DOL intended from the outset. Kinkead v. Humana, Inc., 206 F. Supp. 3d 751, 754 (D. Conn. 2016) (quoting Harper v. Va. Dep't of Tax'n, 509 U.S. 86, 97 (1993)).  Some courts espousing this view have specifically rejected the idea that the DOL's policy on enforcing the rule starting in November should matter for private causes of action.

> "The Court additionally rejects Defendant's argument that the [Department of Labor]'s decision to delay its own discretionary enforcement of the [amended regulations] somehow mandates that private enforcement actions must also be delayed, particularly where the [Department of Labor] has consistently maintained that the effective date of the [amended regulations] is January 1." [  ] Indeed, a discretionary decision by the Department of Labor is not binding on individual private causes of action.
>
> Guerrero, 247 F. Supp. 3d 1288 at 1293 (quoting Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y, 215 F. Supp. 3d 805, 810 (S.D. Iowa 2016)).

On the other hand, a minority of courts have come down on the side of a later date, either DOL's adopted enforcement date or the date of the D.C. Circuit mandate.  Reasons include reliance of employers and the DOL policy.  See Guerrero, 247 F. Supp. at 1292 (discussing cases).  One of them is in this

circuit.  In Sanchez v. Caregivers Staffing Servs., Inc., No.
1:15-cv-01579, 2017 WL 380912, at *3 (E.D. Va. Jan. 26, 2017),
the court considers that "the rule was a legal nullity" before
the D.C. Circuit ruling and applying it from January 1, 2015
"would unfairly force employers to pay overtime compensation
when overtime pay for companionship services was not required,"
without offering further discussion.

The court finds persuasive the "overwhelming majority
of well-reasoned opinions" endorsing the January 1 date.
Hypolite v. Health Care Servs. of New York Inc., No. 16-CV-
04922, 2017 WL 2712947, at *4 (S.D.N.Y. June 23, 2017).  As one
such opinion explained, limiting the effect of the rule to
"fully prospective application requires, at a minimum, that the
new rule of law is 'unanticipated' or 'an issue of first
impression whose resolution was not clearly foreshadowed.'"
Collins v. DKL Ventures, LLC, 215 F. Supp. 3d 1059, 1066 (D.
Colo. 2016) (quoting U.S. v. Johnson, 457 U.S. 537, 550 (1982)).
See Richert, 2017 WL 4349084, at *2.  One can hardly say that of
an administrative rule that was in the works for years and was
slated to go into effect on January 1, 2015.

Accordingly, the non-movants would potentially suffer
prejudice from a stay, as many employees might unknowingly
accept the smaller DOL settlement if they are not given the

option of immediately opting into the present suit, which
presents a greater prospect of recovery.  The third factor thus
also tilts against granting a stay.

As the analysis shows, all three factors point to
denying a stay.  For the foregoing reasons, the request for a
stay is denied.  See also Magana v. Shore Construction, LLC,
Civil Action No. 17-1896, 2017 WL 2911353 (E.D. La. July 6,
2017) (denying request for a stay, pending the outcome of a DOL
investigation).

C.    Scope of Notice

Loved Ones argues that not all of its employees are
likely owed overtime pay and that the class should be limited to
those home health aides who serviced clients in both the private
care program and the Medicaid waiver program and worked more
than forty hours for the period between November 12, 2015 and
May 1, 2017, so called "hybrid" aides.  ECF No. 8, at 10-11.
However, Loved Ones does not explain why it believes that
employees who serviced clients only in the private care program
or only in the Medicaid waiver program could not be owed
overtime pay.  For their part, plaintiffs specifically allege
that for at least part of the time period under consideration,
the underpayment did not take the form of separate paychecks by
"stream of payment" but rather involved "simply fail[ing] to pay

an enhanced overtime hourly rate . . . despite the inclusion of all such hours on a single paycheck." Compl. ¶ 14. In principle, such a method of underpayment does not depend on what income stream or program a given worker may fall under. As the foregoing discussion shows, the date range proposed by Loved Ones is also unduly restrictive.

Accordingly, the court agrees with plaintiffs that the purported class at this notice stage is better viewed as "all of Defendants' FLSA non-exempt employees who may also have claims for unpaid overtime." Mot. at 4. In practice, this class includes all non-exempt employees employed at any time by one of the defendants or any entities controlled by one of them during the three years preceding the time of filing of the original complaint in this action, July 28, 2017. As already discussed, defendants will have an opportunity to argue that the class, in whole or in part, is not "similarly situated" should they file a decertification motion upon future discovery.

D.   Method of Notice

Plaintiffs' counsel is asking the court to order that defendants provide the names and last known addresses of all putative class members so that notices of the pending action can go out to them. They also request dates of birth and partial social security numbers for those workers whose mailed notices

18

are returned by the post office.  Plaintiffs' counsel would
additionally like to obtain permission to send a follow-up
postcard to class members who have not responded within thirty
days.  Finally, plaintiffs request that in addition to the
individual mailings, a copy of the notice be posted at all of
the defendants' worksites in the same areas in which they post
required notices under the Act.

Loved Ones, citing multiple cases, objects that
providing the dates of birth and social security numbers is
unnecessary and would constitute an invasion of privacy absent a
demonstrated "special need."  Loved Ones believes such
disclosure should only be authorized as a "last resort."  The
court agrees that plaintiffs should attempt other less invasive
means of contact first, before possibly asking the court again
for permission to obtain such private information.  See, e.g.,
Valerio v. RNC Indus., 314 F.R.D. 61, 75 (E.D.N.Y. 2016)
("Courts are reluctant, however, to authorize disclosure of
private information, such as dates of birth and social security
numbers in the first instance and without a showing that the
information is necessary for the plaintiff to notify potential
opt-ins of the collective action."); Woods v. Club Cabaret,
Inc., 140 F. Supp. 3d 775, 785 (C.D. Ill. 2015) ("Likewise,
dates of birth and the last four digits of social security

numbers would be of marginal use in locating potential plaintiffs and, whatever that marginal use might be, it is substantially outweighed by the privacy concerns of potential plaintiffs."); Martinez v. Cargill Meat Sols., 265 F.R.D. 490, 501 (D. Neb. 2009) (denying the plaintiffs' request for social security and telephone numbers when "there is no evidence indicating Cargill is unable or unwilling to provide correct and current addresses for its employees"); but see Hussein v. Capital Building Servs. Grp., Inc., 152 F. Supp. 3d 1182, 1199-200 (D. Minn. 2015) (finding that the requested contact information, including date of birth and the last four digits of the social security number, "may prove necessary" and ordering its production).

Loved Ones also opposes sending a follow-up postcard. The court finds, however, that the request to send a follow-up postcard is reasonable if the postcard, like the first notice, is carefully crafted to avoid the appearance that the court endorses the action or encourages participation. See, e.g., Murray v. Silver Dollar Cabaret, Inc., Case No. 5:15-CV-5177, 2017 WL 514323, at *5 (W.D. Ark. Feb. 8, 2017); Woods v. Vector Marketing Corp., No. C-14-0264 EMC, 2015 WL 1198593, at *7 (N.D. Cal. Mar. 16, 2015). Accordingly, the court will review the postcard for the presence and adequacy of such a disclaimer.

Finally, Loved Ones opposes the request to post notice in the common areas of its facilities because "[s]uch posting will only create chaos and confusion" and "cause tension in the workplace." ECF No. 8 at 16. The concern seems overblown inasmuch as Loved Ones only rectified its deficient pay practices in May of 2017, so a fair number of the current employees are likely to be in the affected class, and realistically most if not all workers will know about the overtime pay concern because of the pending DOL settlement anyway. Courts routinely approve posting a notice in similar cases even though notice is also sent by mail because "[p]osting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." Bittencourt v. Ferrara Bakery & Café Inc., 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (internal quotation omitted; citing cases); see also, e.g., Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 68 (E.D. Pa. 2009) ("Posting Notice in the workplace of the putative class members strikes this Court as an effective and efficient way to ensure that potential class members are aware of the litigation. Defendant has not detailed how a Notice . . . would be disruptive to the staff."); but see Fenley v. Wood Grp. Mustang, Inc., 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016) (noting

21

that there is no one-size-fits-all approach to notice and refusing to order posting of notice for a class of inspectors).

Here, as in Pereira, Loved Ones has not detailed how posting a notice would be disruptive, and considering the class of workers in this litigation, there is reason to believe that reaching them by mail alone may not be sufficiently effective, e.g., due to changes of address.  The Fenley court, noting the diversity of circumstances bearing on the court's discretionary decision on what methods of notice are most effective in a given situation, cited a case where "oil-and-gas-industry workers were unlikely to receive ordinary mail due to their work responsibilities and being away from their homes for extended periods."  170 F. Supp. 3d at 1075 (citing Thompson v. Peak Energy Servs. USA, Inc., No. CIV.A. 13-0266, 2013 WL 5511319, at *3 (W.D. Pa. Oct. 4, 2013)).  Accordingly, the court agrees with plaintiffs and orders that the initial notice sent by plaintiffs to the employees of Loved Ones be then posted in the South Charleston and Ripley offices of Loved Ones as well as in any other places where Loved Ones or Donna Skeen ordinarily place required notices under the Act.

Further, the court agrees with Loved Ones that before any notice is sent, defendants should be given an opportunity to review it and communicate any concerns they might have.  In

22

addition, the court wishes to review and approve the notice.

### III. Conclusion

For the foregoing reasons, the court hereby grants the plaintiffs' motion and ORDERS that:

1. The class is conditionally certified as consisting of all non-exempt employees who have worked for one of the defendants at any time during the three years preceding July 28, 2017;

2. By December 11, 2017, plaintiffs shall propose a form of the first notice to the defendants and the court;

3. By December 11, 2017, Loved Ones shall provide plaintiffs' counsel with the names and last known addresses of all class members; and

4. By December 14, 2017, defendants have an opportunity to object to the form of the notice and negotiate, in good faith, a mutually agreeable form with plaintiffs, which form shall then be submitted for approval to the court by December 20, 2017.

The Clerk is directed to forward copies of this order to all counsel of record.

ENTER: December 1, 2017

23

John T. Copenhaver, Jr.
United States District Judge