UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PAMELA MAYHEW, BETSY FARNSWORTH,
on behalf of themselves and others
similarly situated,

        Plaintiffs,

v.                          Civil Action no. 2:17-cv-03844

LOVED ONES IN HOME CARE, LLC,
and DONNA SKEEN,

        Defendants.

## MEMORANDUM OPINION & ORDER

Pending is plaintiffs' motion to reissue notice and reopen the opt-in period for plaintiffs' action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., filed August 30, 2018.

### I.    Background

On an unspecified date in March 2016, the United States Department of Labor ("DOL") contacted defendants about initiating an investigation related to their pay practices. Rose Aff., ECF No. 223-1, Ex. 1, ¶¶ 21-22.  Plaintiff Pamela Mayhew complained to the DOL in early 2017, seeking overtime pay she was owed.  On July 28, 2017, Mayhew initiated an individual

action under the FLSA.  ECF No. 1.  On August 30, 2017, Mayhew filed her First Amended Complaint expanding her prior claims to include a collective action under the FLSA.  ECF No. 6.

The DOL held a final exit conference with defendants on September 13, 2017, during which they were advised of an overtime compensation obligation for over 200 employees of Loved Ones In Home Care, LLC ("Loved Ones").  Rose Aff., ECF No. 223-1, Ex. 1, ¶¶ 30-31.  DOL ultimately offered to settle the claims without Loved Ones admitting any liability.  Id. ¶¶ 46-47.  On October 26, 2017, in facilitation of settlement, DOL presented its final calculations to Loved Ones on a standard DOL Form 56, which provided a summary of alleged unpaid wages for certain current and former employees.[1]  Id. ¶¶ 39-40; see Form 56 Excerpt, ECF No. 223-1, Ex. D.  That form was accepted and signed by defendant Donna Skeen on behalf of Loved Ones on November 8, 2017, and the DOL allotted defendants until February 6, 2018 to settle with the affected employees.  Rose Aff., ECF No. 223-1, Ex. 1, ¶¶ 49-53.  The DOL settlement process concluded no later than February 6, 2018.  Id. ¶¶ 61-62.

---

[1] The court held a scheduling conference in this case on the next day, October 27, 2017, in which the DOL investigation and settlement were discussed.  ECF No. 13.

Defendants presented to employees who were offered a DOL settlement three documents: a Cover Letter, a Form 58 (a standard form, drafted by DOL for defendants to use during the settlement process), and a "Release." Id. ¶ 55-57; Cover Letter, ECF No. 221-2, Ex. B; Release, ECF No. 221-3, Ex. C. Notably, the Cover Letter provided three options to the employees: 1) "voluntarily accept payment of the sum of money calculated by the DOL," 2) "voluntarily refuse to sign the Form and choose to participate in the . . . [instant lawsuit] that is seeking a larger sum of alleged unpaid overtime wages," or 3) "voluntarily do neither." Cover Letter, ECF No. 221-2, Ex. B, at 1. As noted, the Release explicitly identifies this civil action and its potential for collective action under the FLSA. The Release further states: "[t]he releases set forth in this Release shall cover all claims both known and unknown in the aforementioned civil action." Release, ECF No. 221-3, Ex. C, at 1, 3.

In addition, from November 2017 through January 2018, some employees came to Loved Ones' office to discuss the offer of settlement. Rose Aff., ECF No. 223-1, Ex. 1, ¶ 53. They were provided a verbal explanation of that offer. Id. At some unknown point, defendants began video recording the meetings. Id. ¶ 54. Defendants sent a copy of the Cover Letter and the

Release to plaintiffs' counsel via email on December 14, 2017;
plaintiffs' counsel responded with his own email containing
several objections to the content of those documents.  Mr. Toor
Email, ECF 223-2, at 11-12.

On December 1, 2017, the court conditionally certified
the collective action in this case.  ECF No. 23.  Defendants
subsequently moved to limit the conditional collective action
certification on the grounds that it was too broad.  ECF No. 27.
After full briefing, the court ordered, on February 23, 2018,
that the collective action be limited to employees who worked
for defendants in home health aide in two or more programs
during the course of the same pay period at any time between
July 28, 2014, and May 31, 2017.  ECF No. 54, at 4.

During the court's consideration of the motion to
limit the collective class, the parties filed an agreed
collective proposed notice on December 19, 2017.  ECF Nos. 32-
33.  This notice was very similar to a notice filed by the
plaintiffs on March 5, 2018 and approved by the court on March
6, 2018.  ECF Nos. 66, 67.  Importantly, the Notice said: "*The
lawsuit and the DOL settlement are completely separate from each
other"* and "EVEN IF YOU SETTLE YOUR CLAIMS WITH DOL, YOU MAY
STILL PARTICIPATE IN THE LAWSUIT.*"*  ECF No. 66, at 1, 2
(emphasis in original).  Further, the Notice set a June 1, 2018

deadline for potential plaintiffs to mail his consent to sue, id. at 3, and the defendants had already provided plaintiffs' counsel with the names and addresses of employees who met the court's conditional collective action definition on February 27, 2018.  ECF No. 60.

On August 31, 2018, the plaintiffs moved, the day after filing the motion currently in dispute, to re-expand the scope of the FLSA collective class.  ECF No. 222.  The plaintiffs later sought to withdraw that motion, which the court permitted them to do on September 27, 2018.  ECF No. 230.

On September 19, 2018, the plaintiffs moved to extend certain deadlines, particularly for discovery.  ECF No. 226. Defendants did not oppose extending the deadlines but did object to the plaintiffs' visiting blame on defendants respecting the necessity of an extension.  On September 27, 2018, the court extended discovery pending further order.

## II.  Analysis

The parties offer competing standards governing the adjudication of this dispute.

The plaintiffs first contend that the "Defendants were directly communicating materially false information to their

employees about the lawsuit and those employees' rights . . . .

[which] created significant confusion within the potential

plaintiff population and . . . directly led to the failure of

many potential plaintiffs to opt-in to the action."  Pls.' Mot.

Reissue Notice ("Mot.") 3.  Plaintiffs base their contention on

Hoffman-La Roche Inc. v. Sperling, in which the Supreme Court

stated:

> These benefits [of collective action], however, depend
> on employees receiving accurate and timely notice
> concerning the pendency of the collective action, so
> that they can make informed decisions about whether to
> participate. Section 216(b)'s affirmative permission
> for employees to proceed on behalf of those similarly
> situated must grant the court the requisite procedural
> authority to manage the process of joining multiple
> parties in a manner that is orderly, sensible, and not
> otherwise contrary to statutory commands or the
> provisions of the Federal Rules of Civil Procedure.
> See Fed. Rule Civ. Proc. 83. It follows that, once an
> ADEA action is filed, the court has a managerial
> responsibility to oversee the joinder of additional
> parties to assure that the task is accomplished in an
> efficient and proper way.

493 U.S. 165, 170-71 (1989).  In Sperling, the Supreme Court

observed that courts may play "any role in prescribing the terms

and conditions of communication from the named plaintiffs to the

potential members of the class on whose behalf the collective

action has been brought."  Id. at 169.  Further, plaintiffs

assert that the court's "procedural authority" empowers it to

dictate how and when a "defendant may communicate with potential

collective action plaintiffs about the subject of that

litigation." Mot. 8.

Plaintiffs find further support in <u>Kleiner v. First

Nat'l Bank of Atlanta</u>, which states:

> Unsupervised, unilateral communications with the
> plaintiff class sabotage the goal of informed consent
> by urging exclusion on the basis of a one-sided
> presentation of the facts, without opportunity for
> rebuttal. The damage from misstatements could well be
> irreparable. . . . The [defendant's] subterfuge and
> subversion constituted an intolerable affront to the
> authority of the district court to police class member
> contacts.

751 F.2d 1193, 1203 (11th Cir. 1985) (internal citations

omitted).

Plaintiffs also contend that <u>Sperling</u> applies to the

situation presented here, where <u>ex</u> <u>parte</u> communications took

place "between Defendants in an on-going FLSA collective action

and all potential plaintiffs who ha[d] not yet received a court-

approved notice of that action." Mot. 4. The primary focus of

plaintiffs' contention is on the Cover Letter and Release

provided by defendants to the employees involved in the DOL

settlement and how those documents adversely impacted the

court's "managerial" role over both parties to a collective

action. <u>Id.</u> at 5. Particularly, the plaintiffs complain that

the Cover Letter omits the option the employees had to both

accept the DOL settlement and participate in the FLSA collective

action and that the Release purports to forfeit any causes of action the employees might have against defendants.  Id. at 6.

In their reply, the plaintiffs also note two additional factors that demonstrate how the defendants allegedly confused or misled potential plaintiffs during the DOL settlement.  First, the plaintiffs state that defendants have yet to disclose the video recordings of the settlement discussions, which they contend will either confirm or deny whether defendants' statements were misleading.  Pls.' Reply Defs.' Resp. ("Pls.' Reply") 5-8.  In a separate motion, filed by plaintiffs on October 12, 2018, the plaintiffs acknowledge that defendants have provided video of the settlement meetings with individuals who eventually opted into the collective action.  The videos include defendants reading from a script in which they verbalize the same communications that plaintiffs complain of in the Cover Letter and Release.  ECF No. 234, at ¶¶ 4-5.

Second, the plaintiffs argue that the Notice was too lengthy and complex to cure the purported confusion suffered by this particular group of potential plaintiffs.  Id. at 8-9.  The court notes that the Notice was devised by the parties and approved by this court on March 6, 2018.

In conclusion, plaintiffs contend that regardless of the content of the communications between defendants and the employees who received the Cover Letter and Release, the defendants' unsupervised and unilateral communications offend the court's procedural authority over the collective action. Mot. 8. Plaintiffs also maintain that the content of defendants' direct communications with potential plaintiffs via the Cover Letter and Release violates 29 U.S.C. § 216(b) because it was patently false and therefore was part of a "scheme to skirt the court's responsibility" to ensure potential plaintiffs make informed decisions about whether to participate in collective actions. Id. at 12 (citing Sperling, 493 U.S. at 171-72). Specifically, the plaintiffs claim that because these communications were made while the Notice was being negotiated, defendants knew the options provided to the potential plaintiffs in the Cover Letter, Release, and DOL Settlement meetings contradicted the option in the Notice to both obtain a DOL settlement and pursue this collective action. See Pls.' Reply 3-4.

Plaintiffs' arguments are unpersuasive. It is undisputed that defendants presented the Cover Letter and Release to, and had conversations with, potential plaintiffs in this FLSA claim during the DOL settlement process. But the

other circumstances herein are quite different from either Sperling or Kleiner.  Respecting Sperling, the emphasis there was on the court's role in providing accurate and timely notice of a collective action to potential plaintiffs.  The plaintiffs reason that because Sperling states "a trial court has a substantial interest in communications that are mailed for single actions involving multiple parties . . . . a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties."  493 U.S. 171 (internal citations omitted).  The Court, however, also observed that "the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice."  Id.

     Here, the alleged misleading communications contained in the Cover Letter, Release and/or the employees' direct communication with defendants were made to all the employees who inquired about the DOL settlement by February 6, 2018.  The Notice for this FLSA case was distributed and posted on March 6, 2018, at least one month after any of those communications were made.  The March 6, 2018 Notice thus

resolved any of the confusion caused by the misleading communications made by defendants in the DOL settlement.[2]

Respecting **Kleiner** the court there approved the class notice under Rule 23(c)(2) of the Federal Rules of Civil Procedure, which informed recipients that they were included in the class unless they opted out. 751 F.2d at 1197. The defendants in that case proceeded to solicit class exclusion requests in a surreptitious manner that the court later found to be illegal. Id. Here, in contrast, notice of the collective action had not been given at the time of the alleged confusing and inappropriate communications, and the employees, at the time of their settlement meetings, were prospective plaintiffs who would have to take the affirmative step of opting into the collective action after certification and notice. See 29 U.S.C. § 216(b). Inasmuch as defendants sent plaintiffs' counsel an email attaching both the Cover Letter and Release on December 14, 2017, it further appears that the defendants here were

---

[2] Plaintiffs' counsel states that he received between twenty and thirty phone calls from potential plaintiffs before, during and after the opt-in period, each expressing the caller's belief that she had waived the right to participate in the FLSA action by taking the DOL settlement. Mot. 4. However, the Notice included counsel's contact information, in part, to help clarify any confusion a potential plaintiff might have felt after receiving the Notice.

forthcoming with plaintiffs' counsel about their communications with the employees.

Ultimately, the communications between defendants and their employees during the DOL settlement proceedings may have confused some of the potential plaintiffs, but the law does not support plaintiffs' claim that confusing or false communications, made before adequate and appropriate notice went out to the potential plaintiffs in a collective action, entitles plaintiffs to reissue notice and reopen the opt-in period. No act by defendants has interfered with the "managerial role" the Supreme Court requires of district courts in collective actions.[3]

## III. Conclusion

For the foregoing reasons, plaintiffs' motion to reissue notice and reopen the opt-in period for the collective action be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record.

ENTER: December 27, 2018

John T. Copenhaver, Jr.
Senior United States District Judge

---

[3] In view of this disposition of plaintiffs' motion, the court does not address defendants' further arguments.