IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

**PAMELA MAYHEW, BETSY FARNSWORTH**
on behalf of themselves and others
similarly situated,
    Plaintiffs,

                                                                               Civil Action No. 2:17-cv-3844

    v.

**LOVED ONES IN HOME CARE, LLC**
and
**DONNA SKEEN**
**Defendants**

## JOINT MOTION TO APPROVE SETTLEMENT

Plaintiffs, by the named Plaintiffs Pamela Mayhew and Betsy Farnsworth ("Plaintiffs"), by counsel, and Defendants Loved Ones in Home Care, LLC, and Donna Skeen ("Defendants") (collectively referred to as "Parties), through their counsel, now submit this Joint Motion To Approve Settlement ("Motion").

## Factual Background

Plaintiffs are current and former in-home care providers/employees of Defendants who filed a collective action under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA" or "the Act").  Through this action, Plaintiffs sought to collect wages they contend were not paid to them as required under the maximum hour provisions of the FLSA.  Originally filed as a single party action, Plaintiffs moved for conditional certification of the action as a FLSA collective.  (Doc. No. 5).  After extensive briefing, the court granted Plaintiffs' motion and conditionally certified a class of similarly situated employees and former employees in December 2017 (Doc. No. 23).  In June 2019, and without objection by Defendants, the court granted final certification to the originally

defined FLSA class.  (Doc. No. 293).

Throughout the litigation of this case, liability has never been aggressively challenged. At the beginning of 2015, the United States Department of Labor ("DOL") revised rules that formerly exempted in-home care providers from the maximum hour provisions of the FLSA.  Defendants did not contemporaneously revise their payroll practices to coincide with this revision.  As a result, Defendants continued after 2015 to pay many of their in-home care workers under the former exemption without compensating those employees for hours over forty (40) worked in any one workweek at the legally required rate of one and one-half times the regular hourly rate.

Litigation of several underlying issues has been extensive but both parties have always contested the period of time for which Plaintiffs should receive unpaid overtime wages together with the proper calculation of the amount of wages owed.  Through a Joint Expert Disclosure (Doc. No. 279) and a Supplement to Joint Expert Disclosure (Doc. No. 285) filed in the Spring of 2019, the parties engaged a mutually agreed expert to calculate binding figures representing amounts owed to each Plaintiff using a variety of different date ranges.  The settlement amount derives from a compromise within the date ranges but relies entirely on the gross figures of unpaid wages as calculated by the agreed expert.  The attached **Exhibit** reflects the gross amounts the parties have agreed will be paid to each Plaintiff as payroll checks (to be subject to appropriate taxes and other withholdings).

## Court Approval of Private Settlement of FLSA Claims

Fourth Circuit precedent, as well as the FLSA, requires that the Court approve a private settlement of claims under the FLSA. *See, Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007); *Lynn's Food Stores, Inc. v. United States of America*, 679 F.2d 1350, 1353 (11th Cir. 1982). If a settlement in an FLSA case is the product of a reasonable compromise over issues, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Although the Fourth Circuit yet to address the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman v. LBDP, Inc.,* Civil No. DKC–12–1083, 2013 WL 2949047, *2 (D. Md. June 13, 2013) (citing *Lynn's Food Stores, Inc.* 679 F.2d at 1350); *see also Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014) (listing the same factors announced in *Lynn's Food Stores*).

Pursuant to the holding in *Lynn's Food Stores*, a FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Id. at *3 (quoting *Lynn's Food*, 679 F.2d at 1355). Consequently, the court must first assess the "bona fides of the parties' dispute . . . to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* (*quoting, Lane v. Ko–Me, LLC*, Civil No. DKC–10–2261, 2011 WL 3880427, *2 (D. Md. Aug. 31, 2011)). The Court must then consider the terms of the proposed settlement agreement for fairness and reasonableness by weighing the following factors:

    (1)    the extent of discovery that has taken place;
    (2)    the stage of the proceedings, including the complexity, expense and likely duration of the litigation;
    (3)    the absence of fraud or collusion in the settlement;
    (4)    the experience of counsel who have represented the plaintiffs;
    (5)    the opinions of [ ] counsel . . . ; and
    (6)    the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo v. Parsons Brinckerhoff, Inc.*, Civil No. 08–1310, 2009 WL 3094955, *10 (E.D.Va. Sept. 28, 2009) (collective action). Where, as is the case here, the proposed settlement agreement "includes a provision regarding attorneys' fees, the reasonableness of the award must also be independently assessed[.]" *Id.* (internal quotation omitted).

### The Court Should Approve the Parties' Settlement Agreement

The parties' settlement agreement is a fair and reasonable resolution of a *bona fide* dispute regarding alleged violations of the FLSA. As detailed below, each of the pertinent factors weighs in favor of approving the parties' proposed settlement agreement.

**1.    A Bona Fide Dispute between the Parties Exists**

The Court may look to the pleadings and the parties' representations in subsequent court filings to determine the existence of a bona fide dispute. *See, Saman*, 2013 WL 2949047 at *3 (*citing Lomascolo,* 2009 WL 3094955 at *16–17). A *bona fide* dispute is evident from the parties' respective positions on the controlling statute of limitations date as well as the date on which the revised DOL regulations would impact these workers. Specifically, Plaintiffs have maintained a three-year statute of limitations should apply and that Defendants cannot factually satisfy the conditions necessary to claim the pre-

2015 exemption from FLSA application. Defendants counter that no recovery could be had from before the effective date of the revised DOL regulations and, in any event, the statute of limitations should not exceed two years. While these disputes continue to exist, the parties have each compromised their respective positions in the interest of reaching a settlement.

**2.   The Proposed Settlement Is Fair and Reasonable**

**a.   The Total Settlement Sum is Reasonable**

The parties have agreed this case will settle for the total sum of $100,000, with $60,000 of that amount dedicated to paying the claims of the individual Plaintiffs, and the remaining $40,000 representing the award of fees and costs to Plaintiffs' counsel. As demonstrated on the attached **Exhibit**, each Plaintiff will receive unpaid overtime for the period beginning with the uncontested application date of the revised DOL regulations (November 2015) through the date in early May 2017, when Defendants contend they corrected the offending payroll practice, a gross amount calculated by the agreed expert to be just over $52,000. This sum represents more than what Plaintiffs would recover upon a strict application of the two-year statute of limitations ($38,500), because the FLSA statute of limitations does not stop running until each individual plaintiff files his/her consent to participate in the collective.

Soon after this action was filed, Defendants engaged with the DOL in an effort to settle claims without the risk of liquidated damages, attorney fees or a longer statute of limitations. The settlement figure for the Plaintiffs also compensates those individual Plaintiffs who settled with the DOL for unpaid overtime not captured within calculations

conducted by the DOL while crediting Defendants for the amounts actually paid under DOL's supervision.

Finally, the Internal Revenue Service insists each Plaintiffs' recovery be paid as the unpaid wages each such amount actually represents. The settlement sum of $60,000 dedicated to Plaintiffs is sufficient for Defendants to pay each Plaintiff the gross settlement amount to which she is entitled (totaling about $52,000) together with the employer's portion of the payroll taxes attributable to that amount. The parties intend for Defendants to forward the **Exhibit** to Defendants' payroll administrator to produce individual settlement checks in the gross amount of each individual settlement with deductions for the employee's applicable payroll taxes and contributions of the employer's payroll taxes and other obligations.

     **b.**     **The Extent of Discovery.**

To date, the parties have served the required Rule 26(a)(1) disclosures, have each served extensive written discovery, and conducted depositions. Thorough discovery has been conducted and the parties both have an understanding of the claims and defenses, as well as the relevant arguments regarding the same. Discovery has been particularly extensive in Defendants' sharing of raw source payroll data with the joint expert to permit accurate calculations of unpaid overtime hours.

     **c.**     **The Stage of the Proceeding.**

The stage of the proceeding leading up to the settlement also supports that the settlement is fair and reasonable. A trial had been scheduled for August 2019 and neither side filed dispositive motions. The parties exchanged settlement proposals prior

to the scheduled trial date and the court held a pretrial conference in August 2019 (Doc. No. 309).  The court continued the August 2019 trial date and the parties eventually resumed negotiations.  Ultimately, the parties agreed to the current settlement amount based on one of the date-range scenarios included in the agreed expert's report.

        **d.**      **The Absence of Fraud or Collusion in The Settlement**

There is no evidence or basis to suggest that the Settlement Agreement is the produce of fraud or collusion. The parties reached the settlement agreement by arms-length negotiations over a period of many months.  The named parties have agreed to accept the settlement after consulting with their counsel as to the meaning and effect of each term.  Throughout this case, the named Plaintiffs understood their rights and ultimately consented to the underlying settlement.  Plaintiffs' counsel has also been in semi-regular contact with unnamed Plaintiffs, all of whom have expressed a desire to resolve the case provided the terms represent a reasonable compromise of their contested claims.   Finally, the settlement is not the product of undue influence, duress, overreaching, collusion or intimidation.  Further, "[t]here is also a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Camp v. Progressive Corp.*, Civil No. 01-2680, 2004 WL 2149079, *7 (E.D. La. Sept. 23, 2004).  In short, the settlement agreement is not the product of fraud or collusion.

        **e.**      **The Experience of Plaintiffs' Counsel.**

Plaintiffs' counsel is experienced in wage and hour litigation.  Mr. Toor has been a member of the West Virginia State Bar since 1989.  In that time, Mr. Toor has practiced in the area of labor and employment, and he is well-versed in federal wage and hour

law. This court has previously heard and granted similar settlement motions in FLSA cases brought by Mr. Toor. Accordingly, Plaintiffs were represented by experienced counsel who exhibited knowledge of the applicable law and defenses to overcome. Furthermore, Plaintiffs were given competent legal advice in order to evaluate their claims under the FLSA.

### f. The Opinions of the Parties

Based on Plaintiffs' and Defendants' counsel's knowledge of the case and the applicable law, as well as their experience in wage and hour litigation, counsel believes the settlement is fair and reasonable. The individual settlement amounts allocated to each Plaintiff derive directly from actual lost wage calculated by the mutually agreed expert. Based on the variety of potential date-ranges, the parties have settled on a date-range applicable to all Plaintiffs that represents the least controversial and most consistent resolution of the dispute between the parties regarding the statute of limitations and the effective date of the DOL revisions to the FLSA home-care exemption. "While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement. *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975).

### g. The Probability of Plaintiffs' Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

Plaintiffs are confident that they would have prevailed if the litigation had continued. However, as in any FLSA action, Plaintiffs would have faced obstacles and uncertainties, including the outcome of a jury trial. Even if Plaintiffs ultimately prevailed on liability, the amount of damages Plaintiffs suffered would have to be determined by the jury or the court based on which statute of limitations would apply and when the

DOL revision was effective. Nonetheless, the Court ultimately has wide discretion as to the method of computing wage differential in a FLSA case. "A district court admittedly has wide discretion in the formulation of a remedy in a case of this sort." *EEOC v. Liggett & Myers, Inc.*, 690 F.2d 1072, 1076 (4th Cir. 1982). Plaintiffs' counsel is confident a jury would have found liability, at least to some extent. The unanswered question prompting settlement is what level of damages would have been appropriate, and this is an issue on which the parties have now compromised their positions in the interest of a resolution. Given the challenges that existed in this FLSA case, the benefit that Plaintiffs will receive from the settlement is fair and reasonable.

### h. The Requested Attorneys' Fees, Costs and Litigation Expenses Are Unopposed and Should be Approved

The attorneys' fees provision of the FLSA exists to enable Plaintiff's to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. § 216(b) ("The court in an action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). In FLSA cases, "the wronged employee should receive his full wages . . . without incurring any expenses for legal fees or costs." *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946).

Plaintiffs' counsel seeks his attorneys' fees on a lodestar basis. The lodestar is the product of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). Courts within the Fourth Circuit begin with the lodestar approach to

determine reasonableness of attorneys' fees in FLSA actions and may include adjustments for time spent on "unsuccessful claims" and "the degree of success obtained." *Randolph v. Powercomm Constr., Inc.,* 715 Fed. Appx. 227, 230 (4th Cir. 2017). In determining what constitutes a "reasonable" number of hours and their billing rate, courts consider the following twelve factors identified in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 717 (5th Cir. 1974).

> (1) the time and labor required; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees in similar cases.

*Wolfe v. Green*, 2010 U.S. Dist. LEXIS 102623 at 10 (S.D. W. Va., September 24, 2010). *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). An analysis of each of these factors leads to the conclusion that Plaintiffs' counsel's lodestar (which is higher than the attorneys' fees provided under the settlement) is reasonable and, thus, the attorneys' fees provided for under the settlement are reasonable.

1. **The time and labor involved**

As discussed above, the time spent by Plaintiffs' Counsel includes: (1) investigating the facts and issues; (2) researching applicable case law; (3) drafting the Complaint and Amended Complaint; (4) drafting and responding written discovery; (5) briefing the motion for conditional certification; (6) preparing for and communicating with a potential

collective class of nearly 700 individuals; (7) receiving, documenting and filing over 100 consents to participate in the collective; (8) reviewing and calculating overtime owed on the basis of Defendants' discovery responses; (9) negotiating for and engaging a mutually agreed expert to conduct another review and calculation of overtime owed; (10) negotiating with Defendants' counsel on the basis of the expert's reports, and; (11) preparing this motion and the associated materials for the court's consideration of the proposed settlement.  Planitiffs' counsel's time in the case amounts to more than 470 hours, or a lodestar amount of nearly $150,000 with costs incurred.  Consistent with the settlement, Plaintiffs' counsel is not requesting an attorneys' fee award in excess of $40,000.00, which includes costs of litigation.  Moreover, Plaintiffs' counsel will continue to spend additional time and resources fulfilling his obligations to administer the settlement.

### 2.  The novelty and difficulty of the questions raised

The issues involved in this action were largely typical of those found in FLSA collective cases.  The parties, however, briefed and argued the relatively novel issue of the effective date of the DOL revisions to the in-home care exemption.

### 3.  The skill required to properly perform legal services rendered

Plaintiffs' counsel has over thirty years' experience representing parties in various employment related matters.  Mr. Toor has extensive experience in wage and hour administration, both from the defense perspective during his work as a lawyer and human resource executive at A.T. Massey Coal Company, Columbia Natural Resources, and as past Vice-Chancellor for Human Resources for the West Virginia Higher Education Policy Commission; and from the plaintiffs' perspective in other FLSA

actions formerly resolved and still pending before this court.  The DOL revision of the applicable exemption for in-home care workers during the statute of limitations period added a level of complexity not encountered in most FLSA collective actions.

### 4. The attorney's opportunity costs in pressing the instant litigation

Plaintiffs' counsel's work on this case necessarily precluded him from working on other matters.  Given the limit on the number of cases and hours that can be billed each day, every hour expended on this case meant Plaintiffs' counsel did not work on other pending cases or pursue other new matters.

### 5. The customary fee for like work

"This factor considers the customary fee 'for similar work in the community,'" *Meadows v. AM & GH LLC*, 2018 U.S. Dist. LEXIS 137972 at 13 (S.D.W.V. Aug. 15, 2018) (citing, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718).  The moving party "bears the burden of 'producing satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.* at 13-14 (citing, *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010).  In 2016, Mr. Toor's requested rate of $300/hour in an FLSA case was approved by this court in *Rose v. Kanawha County Bd. of Educ.*, 2016 U.S. Dist. LEXIS 40173 (S.D.W.V. Mar. 28, 2016).  The same rate was accepted as the lodestar basis for a fee award for Mr. Toor in FLSA actions titled *Lowers v. Valley Diagnostic Laboratories, Inc.*, 2:16-cv-02785 (S.D.W.Va. October 20, 2016); *Perkins v. John Skidmore Development, Inc., et al.*, 1:16-cv-0006 (N.D.W.Va. June 1, 2016); and, *Charles et al. v. State of West Virginia, Offices of the Insurance Commissioner,* 2:16-cv-10334 (December 4, 2018).  Thus, Plaintiffs' counsel has satisfied his burden of proving the market rate in the local

community for the attorneys' fees sought.

### 6. The attorney's expectation at the outset of the litigation

Plaintiffs' counsel provided representation on a contingency basis. However, "[b]ecause an award of attorneys' fees in mandatory under the FLSA, Plaintiffs' counsel expected to receive an award of attorneys' fees under the FLSA if Plaintiffs prevailed in their suit." *Newbanks v. Cellular Sales of Knoxville, Inc.*, 2015 U.S. Dist. LEXIS 191550 at 26 (D.S.C. Feb. 4, 2015).

### 7. The time limitations imposed by the client or circumstances

There were no time limitations imposed by Plaintiffs or the circumstances other than those set by the Court and the Federal Rules.

### 8. The amount in controversy and the results obtained

As discussed above, the settlement provides each Plaintiff a sum calculated by a mutually agreed expert as representing unpaid overtime as calculated by Mr. Griffith as of a particular date-range. The gross settlement sum represents a compromise between other calculations derived from other possible date-ranges. The settlement sum is higher than some of the calculations and lower than others. This is a satisfactory result to the named Plaintiffs given the uncertainty and long duration of this case.

### 9. The experience, reputation, and ability of the attorneys

Plaintiffs' counsel has substantial experience in wage and hour litigation and employment law in general. He presently has other FLSA collective actions pending before this court.

### 10. The undesirability of the case within the legal community in which the suit arose

FLSA cases are a particular flavor of employment law that attract only a limited range of

practitioners. Mr. Toor's experience in similar cases continues to generate new FLSA actions for himself while his exposure on the PACER system in these cases has generated requests that he act as local counsel for other FLSA lawyers handling comparable cases in this district. *See, Lupardus v. Elk Energy Services, LLC*, 2:19-cv-00529 (U.S.D.C.S.D.W.Va.)(Copenhaver, J.).

### 11. The nature and length of the professional relationship with the client

Plaintiffs' counsel began his representation of the first named Plaintiff in July 2017. Through this case, Plaintiffs' counsel has also established independent attorney-client relationships with others of the Plaintiffs and continues to represent them in on-going cases.

### 12. Attorneys' fees in similar cases

The rate sought by Plaintiffs' counsel in this case is consistent with the rates that have been awarded by courts in this district in other FLSA cases. *See,* Discussion of Plaintiffs' counsel's other FLSA cases before this court in §2(h)(5) above. Based upon all of the reasons described above, Plaintiffs' counsel's lodestar which continues to rise, is reasonable.

## Conclusion

The parties reached this settlement after over two years of hotly contested litigation, and it resolves a *bona fide* dispute between the parties. The parties engaged in extensive discovery and analysis of pertinent information and resolved the issues between them with dedication and aggressive representation of each one's respective clients' interests. The settlement represents a fair and reasonable result for all of the Plaintiffs and, by all accounts, is a fair and reasonable compromise of contested issues.

Accordingly, the parties ask the court to approve the proposed settlement.

                PAMELA MAYHEW, BETSY FARNSWORTH, et al.
                By Counsel

__/s/ *Mark A. Toor*_____
Mark A. Toor (WV Bar#5228)
10 Hale Street, Suite 202
Charleston, WV  25301
304-380-2111
mark@marktoor.com

                LOVED ONES IN HOME CARE, LLC and
                DONNA SKEEN
                By Counsel

__/s/ *Richard Neely*_____(with permission)
Richard Neely (WVSB #2709)
159 Summers Street
Charleston, WV  25301-2134
304-343-6500
RNeely@NeelyCallaghan.com